IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

GURJIT S. DOAD and SARABJIT DOAD,
husband and wife and their marital community,

        Plaintiff,

v.

C.R. ENGLAND, INC., a foreign corporation;
LEROY TILLMAN, JR., and JANE DOE
TILLMAN, husband and wife and their marital
community,

        Defendants.

Case No. 3:21-cv-645-JR

ORDER

RUSSO, Magistrate Judge:

    Plaintiffs Gurjit and Sarabjit Doad brought this personal injury action arising from an accident involving two semi-trucks occurring on May 20, 2019, in the parking lot of Love's truck stop in Troutdale, Oregon. Defendants C.R. England and Leroy Tillman, Jr. admitted liability. On December 2, 2022, after a five-day jury trial, the jury found that defendants' negligence was not the cause of harm to plaintiffs. Defendants now seek an award of costs and move for attorney

Page 1 – ORDER

fees. For the reasons stated below, defendants are awarded $4400.19 in costs and $187,661.70 in fees.

## DISCUSSION

A.   Attorney Fees

Defendants seek $189,581 for fees incurred from the April 9, 2022 filing date of the complaint in State Court through December 12, 2022, inclusive of fees incurred in filing this motion pursuant to Fed. R. Civ. P. 54(d)(2)(A).

A court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991). In this case, plaintiff Gurjit Doad presented himself to the Court and jury as significantly impaired and suffering extensive permanent and painful injury to his back causing issues with mobility including reaching and squatting.[1] Plaintiff offered specific testimony such as an inability to drive when he and his family traveled to shop after the first day of trial. Plaintiff told the jury he instead stretched out in the back seat of his vehicle while a family member drove. However, defendants presented video evidence that plaintiff lied about his ability to drive showing he was in fact the driver of the vehicle and appeared in no distress entering and exiting the vehicle. In addition, defendants presented further video evidence of plaintiff engaging in activities such as squatting, lifting heavy objects, reaching overhead, etc., occurring well-before trial and in direct contrast to testimony plaintiff gave to the jury. Plaintiff does not refute these instances of deliberate misrepresentations made to the jury that struck at the very heart of his case for damages. Given the admission of liability for negligence made in defendants' answer, these bad faith misrepresentations infected the entirety of the proceedings in this Court.

---

[1] Plaintiff Sarabjit Doad supported plaintiff's Gurjit Doad's limitations in her own testimony

Page 2 – ORDER

Plaintiffs assert, "[a]lthough dismissal of an action is considered by most courts to be a more severe sanction than assessment of attorneys' fees, in the instant case plaintiffs submit that dismissal of the action would be a less severe sanction as plaintiffs are individuals with no financial ability to actually pay any attorneys' fees or costs that may be assessed against them." However, plaintiffs litigated this case to a jury verdict, a judgment has been entered, and the deadline for filing an appeal has expired. Accordingly, a sanction of dismissal would be no sanction at all. Moreover, limited financial resources while a consideration, is not a sole basis upon which to deny an assessment of fees for bad faith conduct. Cf. Patton v. Cnty. of Kings, 857 F.2d 1379, 1382 (9th Cir. 1988) (the Court should consider the financial resources in determining the amount of attorney's fees to award to a prevailing defendant in a groundless civil rights case, but may not refuse to award attorney's fees to a prevailing defendant solely on the ground of a plaintiff's financial situation); but see Adkins v. Gen. Motors Acceptance Corp., 363 F. App'x 97, 99 (2d Cir. 2010) (suggesting courts consider financial resources in exercising discretion to award fees under inherent power or 28 U.S.C. § 1927 but also noting indigency per se does not preclude an award). In addition, other than stating financial inability to pay, plaintiffs offer no evidence of their current financial condition in their response to the motion for fees.[2]

Given that the vexatious and bad faith conduct by plaintiffs infected the entirety of these proceedings, the Court exercises its inherent authority to assess attorney fees as a sanction and awards defendants their reasonable fees expended in litigating this action. See Hutto v. Finney,

---

[2] In their statement of special damages, plaintiffs assert Gurjit Doad has been completely unable to work since June 22, 2019, and remains permanently disabled from working due to his severe ongoing injuries, but that his historical income for the year previous to the crash was $187,768. ECF 46 at p.3. Plaintiffs further contend that future income loss as a result of his debilitating injuries is $3,528,420. Id. Given that plaintiff's credibility regarding his abilities has been significantly compromised, his assertions of an inability to earn income is also called into question. Accordingly, the Court is left with a record indicating plaintiffs have an ability to pay fees incurred by defendants in defending this case.

Page 3 – ORDER

437 U.S. 678, 689 (1978) (losing litigant's bad faith justified an allowance of fees to the prevailing party).

1.      Reasonable Fee

In determining a reasonable attorney fee, the court employs the lodestar method by first multiplying "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996) (as amended). The court then considers whether it is necessary to adjust the presumptively reasonable lodestar figure in light of the twelve factors articulated in Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975). Id.

Plaintiffs have not contested either the reasonableness of the hours expended by defense counsel in this litigation nor the reasonableness of the hourly rates. Nonetheless, the court is required to ensure an award's reasonableness, irrespective of any opposition from the non-prevailing party. Gates v. Deukmejian, 987 F.2d 1392, 1400-02 (9th Cir. 1992).

"[C]onsiderable discretion [is vested in the court] in determining what attorney's fee is reasonable." Webb v. Ada Cnty., Idaho, 195 F.3d 524, 526-27 (9th Cir. 1999). Required is a "concise but clear" explanation of reasons for the fee award. Gates, 987 F.2d at 1400.

Reasonable hourly rates are those that the local legal market would pay for a case of this nature to a lawyer of comparable skill, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 897 (1984). Blum instructs courts to look at the prevailing market rates in the relevant market. Id. at 895, n. 11. Here, defendants' attorneys seek hourly rates as follows:  Derek J. Ashton, $230 for 434.4 hours of work; Thomas M. Christ, $550 for 7.8 hours of work, Timothy J. Coleman, $470 for one hour of work; Jason P. Evans, $190 for 440.2 hours of work; Hansary A. Laforest, $190

for 4.5 hours of work; Sean R. McClendon, $190 for 1.9 hours of work; and W.S. Tab Wood, $450 for .3 hours of work.³

"This District considers the most recent Oregon State Bar Economic Survey" – i.e., the 2017 Oregon State Economic Survey ("2017 OSB Survey") – as its 'initial benchmark' in determining whether hourly billing rates are reasonable." Prison Legal News v. Umatilla Cnty., 2013 WL 2156471, *4 (D. Or. May 16, 2013) (citations omitted). "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate." Id. (citation omitted). Defendants do not provide the Court with the relevant experience of the attorneys seeking fees or any justification for fees exceeding the average rates. Accordingly, the Court uses the average hourly rate of $327 for civil litigation defense in Portland from the 2017 economic bar survey, (2017 Oregon State Bar Economic Survey, at p. 41) as the maximum allowable rate. As such the Court reduces the requested rates for attorneys Wood, Coleman, and Christ. Application of the average hourly rate for their services results in a reduction of $1919.30.

Given defendants success in this action obtaining a result of zero dollars in damages and the complex issues involving the medical damages and income loss, especially with respect to differences involved in the Canadian medical system, the Court finds the total hours expended in this litigation of 890 hours to be reasonable. In addition, a review of the time records reveals detailed, task-based entries by date. See Bills for Legal Services (Declaration of Jason P. Evans attachment 1 (ECF 106-1)). Accordingly, the Court finds the entire 890 hours of time to be reasonable for a total fee award of $187,661.70.

B.   Costs

---

³ Defendants do not seek reimbursement for the $44,612.50 related to paralegal time billed.

Page 5 – ORDER

Defendants seek $4830.24 in costs including $402 for filing fees, $2,758.08 for transcripts, $399.21 for witness fees, $213.75 for copying, $20 for a docket fee, and $1,037.20 for witness transportation costs. Costs are generally awarded to the prevailing party in a civil action as a matter of course. Fed. R. Civ. P. 54(d).[4] The expenses which may be taxed as costs are enumerated in 28 U.S.C. § 1920 and generally include the requested fees. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987).

1. Deposition Expenses

Plaintiff objects to the claim of $2,758.08 for deposition transcripts asserting they were not used for any purpose at trial and were not used in connection with dispositive motions. Defendants seek transcript costs in the amount of $1,778.70 for the deposition of plaintiff Gurjit Doad on January 3, 2022, $328.33 for the deposition of plaintiff Sarabjit Doad on June 20, 2022, and $221 for the deposition of defendant Leroy Tillman on April 11, 2022. All three of these witnesses testified at trial and as such the depositions were necessarily obtained for use in the case. See Evanger v. Georgia-Pac. Gypsum, LLC, 2022 WL 2952408, at *2 (W.D. Wash. July 26, 2022) (transcripts costs allowed where depositions of individuals were either (1) on Plaintiff's trial witness list; (2) called by defendant to testify at trial; and/or (3) used to prepare Defendant's cross examination of Plaintiff's witness).

Defendants also seek $430.05 for rough trial transcript of Gurjit Doad on December 5, 2022. Defendants contend these transcripts were necessary for trial preparation. In this District,

---

[4] The Court notes that defendants made an offer of judgment and plaintiffs obtained results less favorable than the offer at trial. Accordingly, the Court has no room for discretion in determining whether to award costs. Liberty Mut. Ins. Co. v. E.E.O.C., 691 F.2d 438, 442 (9th Cir. 1982) (where a Rule 68 offer is made and the judgment finally obtained by the plaintiff is not more favorable than the offer, he must pay the costs incurred after the asking of the offer).

"[t]he premium charge for a daily transcript can be awarded if the daily transcript is a necessity rather than for the convenience of counsel." Adidas America, Inc. v. Payless Shoesource, Inc., 2009 WL 302246, at *3 (D. Or. Feb. 9, 2009); see also Hunt v. City of Portland, 2011 WL 3555772, at *8 (D. Or. Aug. 11, 2011) ("The expense of daily transcripts usually requires prior court approval or a finding by the district court that 'the case is complex, and the transcripts proved invaluable to both counsel and the court.'"). Defense counsel does not adequately explain why the daily transcripts were necessary rather than for convenience. Accordingly, the Court declines to award this cost.

    2.    <u>Witness Fees for Greg Gossling</u>

Defendants seek $399.21 for subsistence costs and $1,037.20 for travel costs for witness Gregg Gosling to travel from Salt Lake City, Utah to appear in person at trial. Plaintiffs object contending Gossling could have attended remotely, stayed a day longer than necessary, and speculate that the carrier rate was not the most economical.

Defendants' trial strategy to present in person testimony does not warrant a finding of lack of necessity. Moreover, plaintiffs' anticipated duration of plaintiff Gurjit Doad's testimony turned out to be inaccurate necessitating a one-day delay in the taking Gossling's testimony. Additionally, defendants show that Gossling flew via common carrier and that their attorneys' practice is to use the most economical rate reasonably available. Accordingly, the Court is not persuaded to overcome the presumption in favor of awarding this witness cost.

    3.    <u>Video Copies</u>

Defendants seek $213.75 for the costs of video processing and editing of surveillance footage as outside the scope of section 1920. However, the costs relate to exemplification and copying of any materials necessarily obtained for use at trial. The videos were used as exhibits at

Page 7 – ORDER

trial to impeach plaintiffs. There appears to be a Circuit split as to the recovery of costs associated with the processing and preparing of video evidence. See Summit Technology, Inc. v. Nidek Co., Ltd., 435 F.3d 1371, 1374–1378. (Fed. Cir. 2006) (trial exhibits—including computer animations, videos, Powerpoint presentations, and graphic illustrations—are not taxable as costs under First Circuit law; noting circuit split). However, in the Ninth Circuit, it appears at least modest costs in this area are recoverable under 28 U.S.C. § 1920(4). Maxwell v. Hapag-Lloyd Aktiengesellschaft, Hamburg, 862 F.2d 767, 770. (9th Cir. 1988) (modest expenses for photographs used at trial taxable where necessary to understanding issues and of material aid to jury). Accordingly, the Court allows this modest cost and awards defendants costs in the total amount of $4400.19.

## CONCLUSION

For the reasons stated above, defendants' motion for attorney fees (ECF 105) is granted in the amount of $187,661.70. Defendants' bill of costs (ECF 100) is granted in the amount of $4400.19.

DATED this 3rd day of April, 2023.

    /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

Page 8 – ORDER